UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Charlene Sekula,
    Claimant

    v.                                    Case No. 13-cv-393-SM
                                          Opinion No. 2014 DNH 230

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration,
    Defendant

**O R D E R**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, Charlene Sekula, moves to reverse or vacate the Acting Commissioner's decision denying her applications for Disability Insurance Benefits under Title II of the Social Security Act, and Supplemental Security Income Benefits under Title XVI, 42 U.S.C. §§ 423 and 1381-1383c (collectively, the "Act").  The Acting Commissioner objects and moves for an order affirming her decision.

For the reasons discussed below, claimant's motion is denied, and the Commissioner's motion is granted.

**Factual Background**

I. Procedural History.

In 2010, claimant filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging that she had been unable to work since March 11, 2009. Those applications were denied and claimant requested a hearing before an Administrative Law Judge ("ALJ").

In December of 2011, claimant, her representative, and a vocational expert appeared before an ALJ, who considered claimant's application de novo. Four weeks later, the ALJ issued his written decision, concluding that claimant was not "disabled," as that term is defined in the Act. Claimant then sought review of the ALJ's decision by the Appeals Council. Her request was denied. Accordingly, the ALJ's denial of claimant's applications for benefits became the final decision of the Acting Commissioner, subject to judicial review. Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence. Claimant then filed a "Motion to Reverse the Decision of the Commissioner" (document no. 14). In response, the Commissioner filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 18). Those motions are now ripe.

II.   Stipulated Facts.

Pursuant to this court's Local Rule 9.1, the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 20), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I.   "Substantial Evidence" and Deferential Review.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence.  See 42 U.S.C. §§ 405(g), 1383(c)(3).  See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  It is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by

3

substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966). See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

II. The Parties' Respective Burdens.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). See also 42 U.S.C. § 1382c(a)(3). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that her impairment prevents her from performing her former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985); Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982). If the claimant demonstrates an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform, in light of her age, education, and prior work experience. See

Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. §§ 404.1512(f) and 416.912(f).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A) (emphasis supplied).  See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Acting Commissioner's motion to affirm her decision.

### Background - The ALJ's Findings

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920. See generally Barnhart v. Thomas, 540 U.S. 20, 24 (2003). Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since her alleged onset of disability: March 11, 2009. Admin. Rec. at 22. Next, he concluded that claimant suffers from the following severe impairments: "traumatic brain injury, degenerative disc disease of the cervical spine, affective disorder, anxiety disorder, borderline personality disorder/mood disorder, and narcotic medication use/dependence." Id. Nevertheless, the ALJ determined that those impairments, regardless of whether they were considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1. Id. at 22-24. Claimant does not challenge any of those findings.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to perform the exertional demands of a range of light work.[1] He noted, however, that she:

> can never climb ladders, but can perform the remaining postural activities on an occasional basis. The claimant should avoid concentrated exposure to respiratory irritants and hazards. She has the ability to understand, remember, and carry out basic unskilled instructions and tasks with minimal changes. She can follow a schedule and make decisions, and complete simple tasks on a consistent basis. The claimant would perform best in a low social context, preferably in a non-public setting. She is able to meet the basic mental requirements of substantial gainful activity.

Admin. Rec. at 24. The ALJ also noted that claimant has no past relevant work. Id. at 29.

Finally, at step five of the analysis, the ALJ considered whether there were any jobs in the national economy that claimant might perform. Relying upon the testimony of a vocational

---

[1] "RFC is what an individual can still do despite his or her functional limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Social Security Ruling ("SSR"), 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *2 (July 2, 1996) (citation omitted).

expert, the ALJ concluded that, notwithstanding claimant's exertional and non-exertional limitations, she "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," id. at 30, including several representative occupations identified in his order. Consequently, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act, through the date of his decision (January 10, 2012).

## Discussion

Claimant challenges the ALJ's decision on two grounds, asserting that he erred by: (1) incorrectly determining her residual functional capacity; and (2) improperly assessing her credibility and erroneously discounting her subjective complaints of disabling pain.

I.  Claimant's Residual Functional Capacity.

Claimant first challenges the ALJ's determination that she was capable of performing a range of light work, asserting that the ALJ failed to properly account for her "difficulty concentrating, a debilitating fear of leaving her home, and difficulty dealing with stressors," all of which are products of her "on-going struggles with anxiety and depression." Claimant's Memorandum (document no. 15) at 7. Consequently, she claims the

"ALJ's RFC determination is not supported by substantial evidence. Id. at 10. The court disagrees.

There is, to be sure, evidence in the record supportive of claimant's assertion that she is disabled. As she notes, she has ongoing struggles with anxiety and depression, suffers from low back pain, and has some difficulty concentrating. But, there is also substantial evidence in the record to support the ALJ's contrary conclusion that she is capable of engaging in substantial gainful activity. For example, although claimant asserts that the RFC assessment does not "properly account for the time off-task one would expect [her] to experience," Claimant's memorandum at 8, the ALJ noted that an examining psychologist, Kathleen Prouty, Ph.D., concluded that claimant's sustained concentration and persistence (as well as her understanding and memory) were within normal limits. Admin. Rec. at 23, 627. Dr. Prouty summarized her conclusions as follows, specifically opining that claimant retains the mental acuity and ability to focus necessary to sustain gainful employment.

> Summary. The results of the various intellectual, memory, and cognitive [testing] provided varying results, with numerous strengths and weaknesses. There were minimal consistencies throughout, raising concerns over any specific and localized head injury. Additionally, the claimant has a history of polysubstance abuse, which may have contributed to some of the deficits noted. However, despite various weaknesses, this claimant possesses functional

9

>      cognitive, intellectual, and memory capabilities and
>      could pursue employment when so motivated.

Admin. Rec. at 617.  See also Id. at 737 (psychiatric evaluation performed by Jennifer Boswell, M.D., reaching similar conclusions).  Dr. Prouty also opined that claimant's impairments will not "impose any limitations for 12 months."  Id. at 627.

    Similarly, state agency reviewing psychiatrist, Raymond Novak, M.D., and state agency reviewing psychologist, Michael Schneider, Psy.D., both opined that claimant's "ability to maintain attention and concentration for extended periods" is "not significantly limited."  See Id. at 103, 686.  In fact, Dr. Novak concluded that:

>      Claimant is able to understand, remember, and carry out
>      basic unskilled instructions and tasks, with minimal
>      changes.  Claimant can follow a schedule, make
>      decisions commensurate with SRTs, and complete simple
>      tasks on a consistent basis.  Claimant would perform
>      best in a low social context work setting, preferably
>      in a non-public setting.  Claimant is able to meet the
>      basic mental requirements for SGA.

Id. at 104.  Finally, as the ALJ noted, while claimant complained of memory issues in the immediate aftermath of her head injuries in 2009, the record reveals that those issues had resolved by the following summer or fall.  See, e.g., Id. at 559 ("She reports that she is doing phenomenally better. . . .  When she returned [from a trip to the east coast] she was markedly improved.  She

is no longer having the sensory changes and the numbness in the legs. Problems with memory, concentration, focus are all resolved. She is doing very well. . . She is no longer having any dizziness or vertigo or gait issues."); 712 ("memory problems appear to have cleared recently"); 737 ("Cognition: intact - no evidence of short-term memory impairment"). See also Id. at 617 (claimant scored a 28/30 on a "Mini Mental Status Examination" administered by Dr. Prouty and an overall GAF score of 70, indicating generally mild symptoms).

As for claimant's allegations of disabling physical limitations, the ALJ's contrary conclusion is, again, supported by substantial evidence. For example, the ALJ gave considerable weight to the opinions of neurological consultant Jeri B. Hassman, M.D., who opined that claimant could perform the physical requirements of work associated with light work, subject to some modest limitations (e.g., only occasional stooping, kneeling crouching, and crawling; no ladders or scaffolds). Admin. Rec. at 623-24. See also Id. at 117 (opinions of non-examining medical consultant Jerry L. Dodson, M.D.). And, as the ALJ noted, on physical examination claimant repeatedly demonstrated good balance, normal grip strength, and full (or nearly full) strength in her extremities. See, e.g., Id. at 559 ("She arises from sitting to standing without difficulty. She

ambulates with a normal base of support, stride length, and foot clearance. No use of assistive device. No loss of balance. Balance testing with feet together and eyes closed reveals no loss of balance, no swaying even with significant challenge. . . . STRENGTH: Upper and lower extremity strength are 5/5 bilaterally."); 621 ("She had full range of motion of both upper extremities. She performed a range of motion of both upper extremities a little slowly, but no obvious pain or guarding. She was able to make a fist bilaterally. She had normal grip strength bilaterally.").

II. <u>Claimant's Credibility</u>.

Next, claimant asserts that the ALJ "failed to properly assess [claimant's] subjective complaints of pain and did not include a proper explanation of his credibility finding." Claimant's memorandum at 11. Again, however, the court is constrained to disagree.

The ALJ more than adequately supported his conclusion that claimant's subjective complaints of disabling pain and mental impairments were inconsistent with the medical evidence of record. Admin. Rec. at 26-27 (noting claimant's "symptom magnification," the inconsistency between her GAF score and her testimony, her refusal of psychiatric medications, and her lack

of motivation for treatment in January of 2011).  The ALJ identified several physical examinations that revealed that claimant had full strength in her extremities, intact sensation, and the ability to get on and off the examining table and arise from a seated position without difficulty or assistance.  Admin. Rec. at 26.  See also Id. at 621.  Additionally, despite claims of dizziness/vertigo, claimant repeatedly displayed good balance and actually reported that she was able to ride her motorcycle "really well."  See, e.g., Id. at 269, 508, 559.  The ALJ also supportably relied upon claimant's reported activities of daily living to conclude that her complaints of disabling pain and cognitive deficits were somewhat overstated.  See, e.g., Id. at 616, 630, and 801.[2]

The record also contains reference to an occasion when claimant seems to have misled her primary care physician about whether she continued to seek treatment/therapy at COPE Medical Behavioral Services.  Id. at 712 ("I explained that [claimant] hasn't been seen at COPE since Sept. 2009, [claimant's physician] said [claimant] has been telling her she is being seen here consistently.").  There are also references to claimant's "history of non-compliance with outpatient treatment," id. at

---

[2]   The ALJ also adequately explained his decision to discount the testimony of Andrea DiDonato, who also testified at the hearing.  Admin. Rec. at 27.

736, and potential "drug seeking behaviors" on claimant's part, id. at 104, 119, 474, and 617 - facts that also undermine claimant's credibility.[3]

Also somewhat telling is the observation made by Rexford Burnette, Ph.D., who completed a psychological evaluation of claimant. Dr. Burnette opined that, "Claimant does not appear to be motivated at this time to participate in [vocational rehabilitation], and seems more intent on seeking disability benefits." Admin. Rec. at 631. Claimant's credibility is also undermined by observations made by Dr. Boswell, who noted:

> Ms. Sekula's affect changed after she learned I would not be seeing her again. She appeared to become more relaxed and then, despite her initial endorsement of multiple symptoms, she began giving me a much different version of the nature of her current functioning. She said that she was actually functioning quite well considering her circumstances. She said she had been enjoying gardening and decorating her home. . . . She spoke highly of her landlady and said she had been doing some work for her.

Psychiatric Evaluation (dated July 14, 2011), Admin. Rec. at 736.

---

[3] Claimant reports that she no longer uses heroine, methamphetamine, or cocaine, but has acknowledged continued "self-medication" with daily use of marijuana (despite being counseled as early as 2009 to discontinue that behavior). See, e.g., Admin. Rec. at 104, 388, 489, 500, 508, 561, and 619.

In light of the foregoing, the court cannot conclude that the ALJ's credibility determination, or his decision to discount claimant's subjective complaints of disabling symptoms, lack substantial support in the record.

## Conclusion

This court's review of the ALJ's decision is both limited and deferential.  The court is not empowered to consider claimant's application de novo, nor may it undertake an independent assessment of whether she is disabled under the Act.  Rather, the court's inquiry is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  Provided the ALJ's findings are properly supported by substantial evidence - as they are in this case - the court must sustain those findings even when there may also be substantial evidence supporting the contrary position.  Such is the nature of judicial review of disability benefit determinations.  See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."); Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981) ("We

15

must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

Having carefully reviewed the administrative record and the arguments advanced by both the Commissioner and claimant, the court concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not "disabled," as that term is used in the Act, at any time prior to the date of his decision (January 10, 2012).  Both the ALJ's credibility determination and his conclusion that claimant retains the ability to engage in substantial gainful activity are well-reasoned and well-supported by substantial documentary evidence.

For the foregoing reasons, as well as those set forth in the Acting Commissioner's legal memorandum, claimant's motion to reverse the decision of the Commissioner (document no. 14) is denied, and the Acting Commissioner's motion to affirm her decision (document no. 18) is granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

October 30, 2014

cc: Christopher J. Seufert, Esq.
   Kelie C. Schneider, Esq.
   T. David Plourde, Esq.